# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KARINA OCAMPO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 13-cv-06283 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| REMEDIAL ENVIRONMENTAL ) | |
| MANPOWER, INC. and FERRARA PAN ) | |
| CANDY COMPANY, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Karina Ocampo brought this action against Defendants Remedial Environmental Manpower ("REM") and Ferrara Pan Candy Company, Inc. ("Ferrara"), alleging discrimination and retaliatory termination of her employment based on her sex and sexual orientation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"), and Section 6-101 of the Illinois Human Rights Act, as amended, 775 ILCS § 5/6-101 ("IHRA"). Defendants subsequently filed a motion to dismiss Ocampo's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim ("Motion to Dismiss") (Dkt. No. 13). For the reasons discussed below, the Court denies Defendants' Motion to Dismiss as to Counts I and III, which set forth Ocampo's claims under Title VII, but grants the Motion to Dismiss as to Counts II and IV, which contain her IHRA claims.

## BACKGROUND

The following facts are taken from the Complaint and attached exhibits.[1] Ocampo began her employment with REM, a staffing firm, in January 2009. (Compl. Ex. 1, at 5, Dkt. No. 1.) Most recently, she held the position of Assistant Supervisor, working primarily at Ferrara's facility in Forest Park, Illinois. (Compl. ¶¶ 15-16.) Her job performance at all times met or exceeded Defendants' legitimate expectations. (*Id.* ¶ 17.) Beginning on or about March 15, 2011 and continuing until her employment was terminated by Defendants on February 16, 2012, Ocampo was harassed at work based on her sex and sexual orientation by a male machine operator and a male sanitation manager. (*Id.* ¶ 18.) Ocampo identifies Juan Lopez and Luis Navarro as the two individuals that harassed her. (Compl. Ex. 1, at 10.) Among other things, these individuals inappropriately touched Ocampo's leg and asked her to kiss another female coworker. (*Id.*)

Ocampo reported the harassment to her superiors, but they failed to take any reasonable action to address the harassment or to stop it from recurring. (Compl. ¶¶ 19-20.) Ocampo identifies Supervisor Michael Camarena, REM Manager Brian Reynolds, and Human Resources Representative Angie Castejon as the individuals to whom she reported the harassment, and alleges that they failed to investigate the situation or take any steps to address it. (Compl. Ex. 1, at 5-6.) Ocampo's employment was terminated on February 16, 2012 with no reason provided. (Compl. ¶ 21.) Defendants have treated similarly-situated male, heterosexual, and non-complaining employees more favorably than her. (Compl. ¶¶ 25, 31, 39, 47.) Specifically, male

---

[1] For the purposes of the Motion to Dismiss, the Court accepts as true all well-pleaded allegations set forth in the Complaint and draws all reasonable inferences in favor of Ocampo. *See Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). Furthermore, in assessing the sufficiency of the Complaint, the Court may also consider the allegations stated in Ocampo's EEOC charge, as discussed below.

Assistant Supervisors with similar levels of seniority, work experience and discipline as Ocampo have not been discharged. (Compl. Ex. 1, at 11.)

On or about February 28, 2012, Ocampo filed a charge of harassment and discrimination against REM with the Illinois Department of Human Rights ("IDHR"). (Compl. ¶ 5.) The charge was simultaneously cross-filed with the local district office of the EEOC. (*Id.*) Ocampo then filed a charge of retaliation against REM with the IDHR on or about June 6, 2012, and that charge was also simultaneously cross-filed with the EEOC. (*Id.* ¶ 6.) On or about that same date, Ocampo filed a charge of discrimination and retaliation against Ferrara, and that charge was also cross-filed with the EEOC. (*Id.* ¶ 7.) Ocampo subsequently "transferred" her IDHR charges to the EEOC, and the EEOC issued Notices of Right to Sue on June 4, 2013. (*Id.* ¶¶ 8-9.)

## DISCUSSION

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual allegations, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Pleading facts merely consistent with a defendant's liability and pleading legal conclusions disguised as factual allegations are, by themselves, insufficient. *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

When presented with a motion to dismiss, the Court may "take judicial notice of matters of public record." *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994). The Court may also consider as part of the pleadings documents attached to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to h[er] claim." *Adams*, 742 F.3d at 729; *see also 188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Considering such materials does not convert a motion to dismiss into a motion for summary judgment. *Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998). Accordingly, in this case, the Court finds it appropriate to consider Ocampo's IDHR and EEOC charges, as well as the Voluntary Withdrawal Request Form and Order of Closure relating to Ocampo's IHDR charge that are attached to Defendants' motion to dismiss.

## I. Title VII Claims (Counts I and III)

The Court first considers Ocampo's claims under Title VII. Count I of the Complaint asserts a claim for sex discrimination under Title VII, while Count III asserts a claim for retaliation under that statute. Defendants argue that these claims should be dismissed because Ocampo relies upon broad-based, unsupported conclusions about discrimination and retaliation. With respect to the sex discrimination claim, in particular, Defendants assert that the Complaint consists of only a "bare-bones recitation of the legal elements of a Title VII sex discrimination claim . . . devoid of any factual allegations…." (Def. Mot. to Dismiss at 4, Dkt. No. 13.)[2]

---

[2] Defendants also argue that Ocampo cannot seek relief for claims based on sexual orientation discrimination under Title VII because that statute does not recognize such claims. In her response to the Motion to Dismiss, Ocampo represents that she does not seek to recover for discrimination on the basis of her perceived sexual orientation under Title VII. Moreover, the Complaint does not appear to raise a claim for sexual orientation discrimination under Title VII, and instead reserves that claim for the IHRA counts of the Complaint.

4

Even after the Supreme Court's decisions in *Twombly* and *Iqbal*, however, "a complaint alleging sex discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008)). "In these types of cases, the complaint merely needs to give the defendant sufficient notice to enable him to begin to investigate and prepare a defense." *Id.* Here, Ocampo alleges that she was terminated because of her sex in violation of Title VII and that similarly-situated, male employees were treated more favorably. She identifies the time period and location of the alleged discriminatory behavior, the identity of the alleged perpetrators, and a description of the adverse employment actions that she suffered. At this early stage in the litigation, Ocampo need not allege more. *See Tamayo*, 526 F.3d at 1085 (Title VII claim was sufficiently plead where plaintiff alleged that "she has been subjected to adverse employment actions by Defendants on account of her gender," listed specific adverse employment actions, and she stated that defendants treated her "differently than similarly situated male employees and exhibited discriminatory treatment against [her] in the terms and conditions of her employment on account of [her] gender").

Ocampo can state a sufficient retaliation claim under Title VII by alleging "that she engaged in statutorily protected activity and was subjected to adverse employment action as a result of that activity, though she need not use those terms, of course." *Luevano*, 722 F.3d at 1029. As with her sex discrimination claim, the Court finds that Ocampo has provided sufficient detail in the Complaint and attached exhibits for her retaliation claim under Title VII to survive a motion to dismiss. Ocampo alleges that on or about March 15, 2011, and continuing at various times until the termination of her employment, she was sexually harassed by a male machine

5

operator and a male sanitation manager. (Compl. ¶ 18.) Ocampo further alleges that she reported the harassment to her superiors. (*Id.* at ¶ 19.) She also attached to the Complaint the Charge of Discrimination filed with the IDHR and the EEOC, which provides further detail: it states that Juan Lopez, a Machine Operator, inappropriately touched Ocampo's leg, and that Ocampo reported his behavior to Brian Reynolds and Michael Camarena, a Manager and a Supervisor, respectively. (Compl. Ex. 1, at 10.) Ocampo also states that she was sexually harassed by Luis Navarro, a Sanitation Manager, and reported his behavior to Reynolds and Angie Castejon, a Human Resources Representative. (*Id.*) The Complaint states that Defendants did not take any reasonable action to address the harassment or stop it from recurring, and that Ocampo was terminated for no stated reason. (Compl. ¶¶ 20-21.) Ocampo also alleges that similarly-situated male employees have been treated more favorably by Defendants. (*Id.* at ¶ 25.)

These allegations are sufficiently detailed to survive a motion to dismiss. As the Seventh Circuit stated in *Swanson v. Citibank*, 614 F.3d 400, 404 (7th Cir. 2010) (emphasis in original):

> [T]he plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things happen, not *did* they happen. For cases governed only by Rule 8, it is not necessary to stack up inferences side by side and allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing inferences. … A plaintiff who believes that she has been passed over for a promotion because of her sex will be able to plead that she was employed by Company X, that a promotion was offered, that she applied and was qualified for it, and that the job went to someone else. That is an entirely plausible scenario, whether or not it describes what "really" went on in this plaintiff's case.

The detail provided by Ocampo in the Complaint and attached exhibits is sufficient at the pleading stage to meet the standard of plausibility required to avoid dismissal. As such, the Motion to Dismiss is denied as to Counts I and III.

## II. IHRA Claims (Counts II and IV)

The Court next turns to Ocampo's claims under the IHRA. Count II of the Complaint asserts a claim under the IHRA for sexual orientation discrimination, while Count IV seeks relief for alleged retaliation suffered by Ocampo after reporting what she believed to be unlawful sexual orientation discrimination. As Defendants point out, Ocampo voluntarily withdrew her charge with the IDHR relating to these claims on October 5, 2012. (Def. Mot. to Dismiss Ex. 2, Dkt. No. 13.) On October 12, 2012, the IDHR issued a corrected Order of Closure, approving the request to withdraw and ordering that the charge be closed. (Def. Mot. to Dismiss Ex. 3, Dkt. No. 13.) Nonetheless, without having received a final determination from the IDHR, Ocampo included the claims raised in her IDHR charge in the Complaint she filed in this Court on September 3, 2013.

Defendants contend that Ocampo's IDHR claims should be dismissed because she failed to exhaust her administrative remedies. Ocampo offers two arguments in response: first, she contends that as a result of 2008 amendments to the IHRA, she was not required to exhaust her administrative remedies before filing a complaint in this Court; and second, she claims that it would have been futile for her to pursue her charge with the IDHR further because Ocampo's charge progressed in front of the EEOC, and "[t]he EEOC and IDHR both follow the same administrative procedure when processing a charge of discrimination or retaliation." Both arguments fail.

As an initial matter, both before and after the 2008 amendments, courts routinely have dismissed IHRA claims when the plaintiff has not exhausted his or her administrative remedies. In *Anderson v. Centers for New Horizons, Inc.*, 891 F. Supp. 2d 956 (N.D. Ill. 2012), for example, the plaintiff filed a complaint alleging discrimination in violation of the IHRA and retaliation in violation of Title VII. The plaintiff filed charges with the EEOC and the IDHR, but then chose to

voluntarily withdraw her IDHR charge and received a right to sue letter from the EEOC. The court held that "[a]s a result of having withdrawn the charge, plaintiff cannot now exhaust her administrative remedies and is barred from proceeding with her civil lawsuit against defendants based on age discrimination under the IHRA." *Id.* at 960; *see also Good v. CPI Corp.*, No. 11-cv-0714, 2012 WL 4183214, at *9 (S.D. Ill. Sep. 18, 2012) ("[A]n IHRA claim must first be presented to the IDHR, before judicial review is sought. . . . Therefore, exhaustion through the EEOC would be irrelevant—unless [Plaintiff] is asserting an EEOC claim"); *Hankins v. Best Buy Co., Inc.*, No. 10-cv-4508, 2011 WL 6016233, at *6 (N.D. Ill. Dec. 2, 2011) ("the fact that [the plaintiff] received a right to sue notice from the EEOC does not establish that he may bring suit under the IHRA"); *Wierciszewski v. Granite City Illinois Hosp. Co., LLC*, Civil No. 11-120, 2011 WL 1615191, at *3 (S.D. Ill. Apr. 28, 2011) ("[A] litigant's duty to exhaust administrative remedies under the IHRA is not discharged merely by obtaining a right-to-sue letter from the EEOC.").

In addition, Ocampo's position that the 2008 amendments to the IHRA somehow eliminated the exhaustion requirement cannot be reconciled with the plain language of the statute. The post-amendment version of the IHRA provides that, "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILCS § 8-111(D). In that same section, the IHRA refers to civil actions "commenced in a circuit court pursuant to Section 7A-102." *Id.* at § 8-111(A)(1), (3).[3] Section 5/7A-102 outlines the procedures for filing charges with the IDHR, and specifies in a number of sub-sections when a complainant may "commence a civil action in the appropriate

---

[3] Although the statutory provisions refer to jurisdiction in an "appropriate circuit court," federal district courts may exercise supplemental jurisdiction over IHRA claims under 28 U.S.C. § 1367. *See Wierciszewski*, 2011 WL 1615191, at *1.

8

circuit court." 775 ILCS § 5/7A-102(D)(3). For instance, if the Director of the IDHR makes a determination that there is no substantial evidence, the IDHR is to dismiss the charge by order of the Director and the complainant is to be given "notice of his or her right to seek review of the dismissal order before the Commission or commence a civil action in the appropriate circuit court." *Id.* If the complainant elects to pursue a civil action, it must be initiated "within 90 days after receipt of the Director's notice." *Id.* The same 90-day period for initiating a civil action applies to instances where the Director notifies the complainant that there is substantial evidence. *Id.* at § 5/7A-102(D)(4). Section 5/7A-102 also provides that if the Department has not issued a report within "365 days after the charge is filed…the complainant shall have 90 days to either file his or her own complaint with the Human Rights Commission or commence a civil action in the appropriate circuit court." *Id.* at § 5/7A-102(G).

Ocampo claims that the amendments to the IHRA changed the administrative process such that "a final order from the IHRC [Illinois Human Rights Commission] is no longer a necessary administrative prerequisite to bring an IHRA claim before a state or federal court." (Pl. Resp. at 7, Dkt. No. 18.) In support of her position, Plaintiff relies upon Sections 5/7A-102(D)(3) and (4). But those sections provide specific instructions regarding when a complainant may commence a civil action in an appropriate court: either the IHRC must have made a determination as to whether substantial evidence exists in support of the claim or 365 days must have elapsed since the charges were filed with the IDHR. Neither of those events occurred here. Ocampo did not permit the IDHR to finish evaluating her charge; instead, the charge was voluntarily withdrawn and therefore closed.

Ocampo cannot avoid her exhaustion problem by describing her IDHR charges as being "transferred" instead of closed. This assertion is contradicted by the Voluntary Withdrawal

Request Form and Order of Closure for the IHDR charge, which clearly indicate that the IHRA charges were voluntarily withdrawn by Ocampo and closed by the IDHR. Notably, the Order of Closure does not indicate that Ocampo is entitled to commence a civil court action. Ocampo cannot even argue that she filed her Complaint within 90 days of the dismissal, as her charges with the IDHR were dismissed on October 12, 2012, and the Complaint was not filed until September 3, 2013, almost a full year later. Ocampo cites no provision of the IHRA providing that a complainant may initiate a cause of action under the IHRA in civil court without first allowing the IDHR to make a determination as to the validity of that charge. In short, this Court rejects Ocampo's arguments to the contrary and finds that exhaustion of administrative remedies is a prerequisite to filing a civil action under the IHRA, even after the 2008 amendments.

Next, Ocampo argues that, even if exhaustion of administrative remedies is a prerequisite to filing a civil action under the IHRA, it is not a jurisdictional prerequisite but rather a precondition subject to the defense of futility. According to Ocampo, she was not required to exhaust her administrative remedies because it would have been futile for her to proceed in front of both the IDHR and the EEOC, since the agencies "follow the same administrative procedure." (Pl. Resp. at 9, Dkt. No. 18.) This argument fails as well.

Ocampo has provided no basis for this Court to conclude that the IDHR would have treated her claims the same as the EEOC. Indeed, it is difficult to see how she could do so, given that the EEOC does not have jurisdiction to consider discrimination and retaliation claims based on sexual orientation. Furthermore, Ocampo's approach is at odds with the plain language of the respective statutory schemes, which provide distinct procedures for proceeding in front of the EEOC and IDHR when the claims are not identical. In this case, Ocampo raised sexual orientation discrimination and retaliation claims in front of the IDHR, and sex discrimination and retaliation

claims in front of the EEOC. She then chose to withdraw her claims from the IDHR and to proceed only in front of the EEOC. A determination that it would have been futile for Ocampo to raise her sexual orientation claims in front of the IDHR would undermine the authority of that agency and put the EEOC in the position of exercising jurisdiction over sexual orientation discrimination claims, even though such claims are not entitled to relief under Title VII.

If Ocampo desired to proceed in this Court on her IHRA claims, she should not have voluntarily dismissed the charges filed with the IDHR. As she did withdraw those charges, this Court must dismiss her IHRA claims based on her failure to exhaust her administrative remedies. Counts II and IV of the Complaint are therefore dismissed without prejudice. *See Teal v. Potter*, 559 F.3d 687, 693 (7th Cir. 2009) (citing *Greene v. Meese*, 875 F.2d 639, 643 (7th Cir. 1989) (determining that the "proper resolution for failing to exhaust administrative remedies is dismissal without prejudice")).

## CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part Defendants' Motion to Dismiss as follows:

- Defendants' Motion to Dismiss is granted as to Plaintiff's IHRA claims in Counts II and IV of the Complaint; and
- Defendants' Motion to Dismiss is denied as to Plaintiff's Title VII claims in Counts I and III of the Complaint.

Entered:

Dated: June 26, 2014

_____
Andrea R. Wood
United States District Judge